Good morning, counsel. Welcome to the Ninth Circuit. This is our second day of sitting. And before we get started, I think Judge Paez and I would like to thank Judge Liberti for coming all the way out from Phoenix to help us with our docket. He's going to be sitting with us for a few days, so thank you. Thank you very much. We have today, we have I believe four cases scheduled for argument. We have a few cases that are going to be submitted without argument. I'm going to go ahead and read off those cases first. We've got a consolidated cases of Nava Lopez v. Garland, that's 17-71509 and 18-70016. So those cases were submitted on the briefs as of today. The other case that we're submitting without argument is Denton v. Thrasher, and that's case 22-35290. That case will be submitted as of today. And we have, like I said, four cases scheduled for argument. The first case we're hearing is Shafano v. Kijakazi, 22-35288. I believe that all of our counsel for that case are participating by video. So will the appellant's counsel please announce your name and then let us know how much time you hope to reserve for rebuttal. You may proceed. Thank you. May it please the court, my name is Eitan Kaslianich. I'm representing Martin Shafano in this appeal. I would like to reserve two minutes or so for my rebuttal. Shafano is a veteran who applied for Social Security Disability benefits in June 2015. He's been unable to work since then due to the combined functional effects of some physical, but mostly mental impairments, including PTSD with Dysthymic Disorder, Obsessive Compulsive Disorder, and diabetes. The VA found him to be unemployable since March of 2015. Now, as a result of his impairments, Shafano is hypervigilant. He avoids most social contact. He has difficulty sleeping at night. He's also been diagnosed with severe Obsessive Compulsive Disorder, which causes him to wash his hands very often, which contributes to his hypervigilance, including his need to check door locks. I think the biggest mistake made by the ALJ in this case involves her failure to evaluate the findings and opinions of an examining psychologist, Dr. Palermo. Dr. Palermo evaluated Shafano as part of his application for VA Disability Benefits. This is very important evidence in the file, and the ALJ failed to discuss it, failed to evaluate it, failed to weigh it. The ALJ also erred by improperly rejecting an opinion from a psychologist, Dr. Thompson, that Social Security provided as part of his application for Social Security Disability Benefits. She evaluated Shafano, and she also found that he had significant limitations that would essentially prevent him from sustaining competitive employment. The ALJ also erred by improperly rejecting Shafano's testimony, as none of her reasons were convincing. And the ALJ erred by improperly rejecting the lay evidence from Shafano's wife, Robin Shafano, and from Rudy Valdez, who had been his former manager at Lowe's, which was the last job he had before he became disabled. As a result of all of these errors, the ALJ's residual functional capacity assessment was not supported by substantial evidence. It didn't include all of the limitations from all of those opinions and all of that testimony. And the final issue is that we are asking that the court consider exercising its discretion in remanding this case for the award of benefits. This is Mr. Shafano's second trip to the Ninth Circuit. He was remanded last time, and the ALJ this time is a different ALJ, but she made similar errors to the previous ALJ. And there's really no doubt here that since his alleged onset date, he has been unable to sustain competitive employment. We therefore ask the court to exercise its discretion and award benefits. Unless you have any questions for me, I'm going to reserve the rest of my time for rebuttal. You said that there was error in Step 5, well, no, I guess it's Step 4, whatever it is, in the residual functional capacity determination. If we were to conclude that the ALJ failed to include, let's say, his OCD, shouldn't that go back to the ALJ again to consider that factor? Well, the evidence of his OCD is essentially uncontradicted. The PTSD symptoms alone and the opinions from the two examining psychologists here, that evidence alone is sufficient to support a finding of disability, the limitations from that impairment. And so the OCD is actually, it's one more thing that, yes, obviously contributes even further to his inability to sustain competitive employment. But even without that, I believe the PTSD and the limitations from that are sufficient to justify an award of benefits here. So when we remanded the case the last time it was here, we said that the ALJ did not fully explain why he was not given substantial credit or deference or consideration to the VA's disability determination. And we sent it back and said, you got to give a better explanation. How do you size up the ALJ's explanation for basically not following or not along with the VA disability determination? Well, one thing that's different here is that the, I believe, missing from the prior, in the prior time this was up for review, it's very difficult to get, very time consuming to obtain the, what's called the compensation and pension file from the VA. And by the time of the remand hearing, we were finally able to obtain that, and that included the evaluation from Dr. Palermo, which even better substantiated the significance of his, and explained the, what the VA was basing their opinion on. And the way that the ALJ here dealt with that was by not dealing with it. She didn't even discuss that evidence. Yes, right. But let me ask you this. So what did the, why, as I understand what the ALJ did here, as he said, I can't remember if it was a female ALJ or male, but the ALJ said that he was going to give much deference to the VA determination because they applied a different standard under VA regulations, where under the VA, I think the ALJ said under the VA regs, the VA resolves any doubt or whatever in favor of the veteran, whereas under social security disability law, we don't do that. So therefore, you know, we're not even going to give any consideration to the VA determination really doesn't impact. Well, the bigger, the bigger issue here really does involve the treatment of Dr. Palermo's is required to consider and that supports the VA's determination, a number, you know, the VA's conclusion of disability that by itself isn't something I think that the ALJ must accept. However, the what's interesting here is that the VA's conclusion here, I don't think there really is that big a difference. Sure, the VA provides a little bit more benefit to the doubt to the remedial program that gives the benefit of the doubt to the claimant. For example, in considering a claimant's testimony, the ALJ is required to provide clear and specific clear and convincing reasons to reject it. That was not done here. And so, I don't think there's on the bottom line, I don't think there's that big a difference between the two legal standards that are applied by VA and by Social Security here. Okay. Looks like you have about two and a half minutes left. Would you like to reserve that or? I would. Thank you. Thank you, Counselor. We'll hear from the government. Good morning, Your Honors. Elizabeth Feer on behalf of Kilolo Kijikazi, the acting Commissioner of Social Security. On page 674 of the certified administrative record, the ALJ discusses the VA's 100% disability rating, which is at exhibit 13D in the record. The ALJ specifically mentions 13D in the beginning of her discussion where she says that she's not giving any particular deference to the VA's rating. And then the ALJ goes on page 674 onto page 675 discussing why the VA's 100% rating isn't determinative in this Social Security case. And Dr. Palermo's opinion is at 13D in the record. It's 1143 to 1150 in the record. So, that is what my opponent is talking about. So, the ALJ did actually address the change. Didn't the ALJ basically say there's a different standard in VA? The VA resolves any doubt in favor of the veteran? She does say that. Wouldn't that just apply across the board? If you invoke that rule all the time, that would just mean you never considered the VA opinion. Well, that's not all she did, Your Honor. When I read her analysis of what the VA did, it just looked to me like she was saying it was a different standard. I didn't even see how she applied that standard in her decision making. We said the last time we sent this case back that there had to be a better, more complete explanation of why they weren't giving deference to the VA's determination. And I failed to see where she did that here. Okay, Your Honor. There's a major paragraph toward the end of 674. It's the last full paragraph on there. In the current case, the ALJ does say the VA based its decision on its regulations, which do resolve doubt in favor of the claimant. But then she talks about the evidentiary burdens for the two different agencies. And with all due respect, the fact that the VA does give the claimants the benefit of the doubt is a difference. Well, then why doesn't that apply across the board? We'd never give any debt. That's contrary to our case law. Our case law says you got to give substantial deference to the VA determination. And if you're not going to do that, you need to explain why. So if you say, well, the regulation says we give the benefit of the doubt to the claimant. I just failed to see how they complied with what we told them to do. Well, Your Honor, the next part of the ALJ discusses are the inconsistencies between the VA evidence and the claimant's treatment. The VA 100% disability finding is based on and the ALJ says that she's not finding that particularly relevant because she came to a different conclusion. And that is based on, quote, inconsistency between the objective findings in the claimant's treatment record and the claimant's subjective asserted degree of limitation. She goes on to say that the claimant has undergone only conservative treatment and sometimes minimal at that. He has responded well to his medications. These are all things that the Social Security Administration, under our regulations, has directed specifically to 1529. And you don't think the VA actually considered all those matters when you look at what they did? No, Your Honor, I don't. I think the VA's records are, the VA is doing what it's supposed to do. It's listening to a veteran and under its system, there is, there does not appear to be a need to examine inconsistencies between what the claimant is saying. The VA's three decisions, the most recent decisions are in the record. And if you read them, they look very similar to what our ALJ did in this case. And yet the ALJ says, I'm not giving them any deference. And our case law says that's not what you're supposed to do. I disagree, Your Honor. I think our ALJ followed our regulations pretty clearly and is talking about the inconsistencies between a hundred percent disability rating and the fact that this claimant is only undergoing conservative treatment. Can we change the subject just for one matter? I know time is running out, but I have another question for you. So he does suffer from OCD, correct? Yes. Where is that reflected in the RFC? It's not because the ALJ did not find that to be a severe impairment. Yeah, but the ALJ said he was going to give, you have to include in the RFC all impairments, even if they're not a severe impairment. And he says that he did account for everything. But where does OCD, where's OCD accounted for in his RFC? Well, she didn't find it to be a severe impairment, therefore, Do only severe impairments, are only severe impairments included in the RFC? The RFC includes functional limitations that can be attributed to impairments, whether or not they're severe. The claimant multiple times said that you need to not prevent him from working. And doesn't the OCD that he has been diagnosed with, compulsive hand washing, where he washes so hard at times that his hands bleed? Well, Your Honor, he never said that that was the reason he couldn't work. And he's had OCD his entire life. He was working in jobs, various jobs, and he also was in the military with the same condition. And he has not said that prevented him from working. I can't give you pinpoints at the moment, but at least twice during his testimony, he said that's not the reason he's that isn't by claimant's own admission, something that prevents him from working. Okay. So to pull back, Your Honor, this ALJ actually does explain. And again, our regulations 1524 C4 specifically requires an ALJ to consider inconsistencies between a claimant's allegations and the record to consider whether or not there are things that actually conflict with what the because of his, you know, essentially because he doesn't like being around people. Well, our ALJ points out how he does things that involve being around people. He goes, you know, he did go to Walt Disney World for a seven-day vacation, which required being on an airplane. He did volunteer at his wife's school teaching science. These are not the kind of activities someone who has a crippling inability to be around people. And as I recall, there was evidence in the record that after he went to Disneyland, he was all stressed out. Well, he still went, Your Honor. That's a big, big undertaking for someone who is saying that he can't be around people. And again, the Disney World was in 2015, I believe. As late as February 2017, he's still very much enjoying. He says to his treating source at the VA that he is loving, it's on page 1424, teaching the third graders science in his wife's class. That is not the kind of activity. And our ALJ is required to consider those kinds of inconsistencies. People who suffer from mental impairments, as we've said in our case law, their condition can ebb and flow. They can have good times and they can have bad times. And our case law says you shouldn't just discount their condition because there have been times when they've had good moments, either through drugs or whatever it might take. So he goes to Disneyland one time. I don't understand how that means that he's recovered or that that means that he can work full time. Your Honor, he's also teaching, voluntarily teaching a class, and that's current. That's well after the Disneyland episode. And also this ALJ spends five pages talking about how his treatment doesn't actually ebb and flow. It shows that his medications are helpful. It shows that he has multiple instances where the mental status examination findings are relatively normal. And again, we're talking about someone who's saying that he has such acute symptomology from PTSD that he can't work at all. And yet he's doing things that are of hypervigilance or things that he's talking about would be apparent during the multiple treatment records we have here, which on the contrary, actually show that he's relatively normal psychologically. Let me jump in here. I apologize for cutting you off, but you're almost out of time. And I have a question or two. Let's go back to the Veterans Administration determination. I don't think the rule is that the ALJ is required to give complete deference to the Veterans Administration's determination. Is that right? That is correct. Okay. So the rule is it's supposed to give substantial deference, I believe. Did I state that correctly? Yes. Or explain why not. All right. So I just would like you to tell me what did the ALJ say in the decision? What were the reasons for her to not defer to the Veterans Administration? Okay. And I'll redirect you to page 674 in the record. She talks about the inconsistencies between the claimant's allegations and his actual activities. She talks about how his and it's actually effective. She talks about how he has normal mental status examinations for the most part during his treatment at the VA. She also says that he volunteers with these programs that are inconsistent with the kind of allegations he's making. Then she also says at a certain point that the claimant is, when he tries to get jobs after he She does mention that the VA tries to get people into jobs that they like. Well, the ALJ looked at all of the record, including the VA treatment history, and said, well, he needs a job where he's not dealing with the public. Okay. So the ALJ looked at a variety of different evidence and the ALJ came to a conclusion. Is that the ALJ's conclusions regarding her decision not to give full credit to the VA's 100% disability rating? Substantial evidence is the standard that's, you know, relevant through everything that the ALJ does here. And this ALJ's decision is very detailed. She provides a lot of substantial evidence that supports her conclusion. So even if these judges, you would look at this record differently, or if you could pick out things in the record that aren't 100% consistent with the ALJ's findings, overall, she has amply supported her findings with substantial evidence. All right. Thank you. So the standard, just to be clear, is the ALJ had to give persuasive, specific, and valid reasons if it was going to reject the VA's determination. Is that? That's probably in the case law that has since been abrogated by regulation. And just, I understand that this case does go, but Your Honor, ultimately what matters is whether substantial evidence supports your decision. And just very quickly, the agency changed that regulation about VA ratings for a reason. The underlying reality of the fact that these two systems have never been the same is still reflected in the fact that, you know, the agency now clearly says, we are not obligated to follow the VA's rules. And that's because the systems are different. This ALJ provided ample reasoning for why she didn't accept the 100% disability rating. Just to make it clear, the new regulations don't apply here. That's correct, Your Honor. I'm just making a point that the reality underlying that change in the regulations always existed. All right. Well, thank you. We've let you go over your time a little bit. Do either of my colleagues have any other questions? No, thank you. All right. We'll hear on rebuttal from the other side. Thank you very much. With regard to the teaching volunteer work with third graders, there's a big difference between volunteering in your wife's third grade class to do some projects, some science projects, and going to a workplace, competitive workplace, from 8 a.m. to 5 p.m., five days a week, where even if there are, even if the public is not present, it's a very different kind of experience. There's no evidence in the record of how often he was doing that or that he was able to do that on a regular 40-hour-a-week basis. He certainly wasn't doing it for 40 hours a week or anywhere close to that. With regard to the issue of the correct standard here, Judge Van Dyke is correct that the it's got to be this persuasive, specific, valid, etc. reasons. Yes, it's true that Social Security has promulgated new regulations that basically are a response to this, but frankly, these regulations are blatantly anti-veteran. I've been puzzled from the moment they passed them because they're basically used as a sword against veterans, as part of, ironically. I mean, I think you could characterize it as that the VA regulations are pro-veteran, which maybe that makes good sense, and that the reason, and that basically the Social Security Administration isn't wanting to basically, they want to make sure it's an even playing field and not be pro-veteran in the Social Security context. In any event, it doesn't really matter because I think we all agree that the new regulations don't apply here. You're correct. We are under the old regulations. Under the clear, persuasive, specific, and valid reasons, I mean, we do have two long paragraphs here in the ALJ decision that they've pointed to. It's true, as Judge Pius, I think, pointed out, the first thing that the ALJ said here was that the VA applies a different standard, but then it goes on. It kind of looks like a normal type of analysis we see all the time in these cases where you've got, you talk about only conservative treatment, you know, it's inconsistent with some of his testimony. It kind of relies on all these different, why are those, those are specific reasons, I think. I guess I would assume your argument is that they're not persuasive and valid. Is that right? That's correct. The important thing that the ALJ was missing out on here, and this is throughout the decision, is the issue of why Mr. Schiaffino wasn't obtaining additional treatment from the VA and his reaction, his severe reaction to his attempts to do therapy, and how it just made him feel so much worse. He was afraid to pursue it because he trusted his veterans, his veteran, he had a couple of veteran friends, and they agreed with him that, no, what they're going to do, they're going to try to make you relive the trauma, and it didn't work for us. And he was terrified of having to do that because he didn't see it perhaps not the best judgment, but people who have mental illness don't always make the best judgments in what type of treatment to pursue. He did religiously take his medications for all these years, but the fact that he wasn't getting additional counseling is not a valid reason, and that was one of the reasons she used on the VA. So, that's just an example of why her reasons are not persuasive. Well, thank you, counsel. Thank you. We've gone over a little bit too. Any other questions for my colleagues? All right. Well, thank you. The case will be submitted as of today. We thank both counsel for their arguments, and we'll
judges: PAEZ, VANDYKE, Liburdi